UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

|  |  |
|---|---|
| MISTY L. QUAALE, | NO: 14-CV-0392-FVS |
|              Plaintiff, | ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |
| v. | |
| CAROLYN W. COLVIN, | |
|              Defendant. | |

BEFORE THE COURT are the parties' cross motions for summary judgment. ECF Nos. 12 and 15. This matter was submitted for consideration without oral argument. Plaintiff was represented by Joseph M. Linehan. Defendant was represented by Nicole A. Jabaily. The Court has reviewed the administrative record and the parties' completed briefing and is fully informed. For the reasons discussed below, the court grants Defendant's Motion for Summary Judgment and denies Plaintiff's Motion for Summary Judgment.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 1

**JURISDICTION**

Plaintiff Misty L. Quaale protectively filed for supplemental security income ("SSI") and disability insurance benefits on December 12, 2011. Tr. 197-206. Plaintiff alleged an onset date of March 12, 2008 (Tr. 197, 199); which was later amended to December 12, 2011 (Tr. 220). Benefits were denied initially and upon reconsideration. Tr. 130-136, 140-143. Plaintiff requested a hearing before an administrative law judge ("ALJ"), which was held before ALJ Moira Ausems on October 2, 2013. Tr. 41-78. Plaintiff was represented by counsel and testified at the hearing. Tr. 50-71. Vocational expert Sharon Welter also testified. Tr. 71-77. A supplemental hearing was held before ALJ Lori Freund on May 15, 2014. Tr. 79-93. Plaintiff was represented by counsel and testified at the hearing. Tr. 88-93. ALJ Freund denied benefits (Tr. 17-40) and the Appeals Council denied review (Tr. 1). The matter is now before this court pursuant to 42 U.S.C. § 405(g).

**STATEMENT OF FACTS**

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner, and will therefore only be summarized here.

Plaintiff was 33 years old at the time of the hearing. *See* Tr. 221. She completed high school, where she attended special education classes. Tr. 226. Plaintiff's previous employment included sales attendant, working at a call center,

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 2

running a gondola, and housecleaning. Tr. 50-55. Plaintiff claims she is disabled

due to bipolar, anxiety, depression, anger and acid reflux. *See* Tr. 142. She testified

that she is really sad most of the time and doesn't like to talk to people in person,

has anxiety attacks around strangers, and sees flashes of shadows out of the corner

of her eye. Tr. 55, 61-62, 65-68. She takes medication for these ailments, and

Plaintiff testified that it helps with her symptoms. Tr. 62, 65-66. Plaintiff lives with

her mother and her three children. Tr. 56. She testified that she cooks a couple of

times a week and mows the lawn for ten minutes at a time. Tr. 57-58. Plaintiff

testified that she goes to the store once a month when it is not crowded, and

occasionally to drop off or pick up her kids from school. Tr. 60, 64. She testified

that she reads books, watches television, and gets on the computer to check

Facebook and email. Tr. 68.

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social

Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is

limited: the Commissioner's decision will be disturbed "only if it is not supported

by substantial evidence or is based on legal error." *Hill v. Astrue,* 698 F.3d 1153,

1158–59 (9th Cir.2012) (citing 42 U.S.C. § 405(g)). "Substantial evidence" means

relevant evidence that "a reasonable mind might accept as adequate to support a

conclusion." *Id.* at 1159 (quotation and citation omitted). Stated differently,

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT ~ 3

substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether this standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir.2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* at 1111. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders,* 556 U.S. 396, 409–10 (2009).

## FIVE–STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 4

1    months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be

2    "of such severity that he is not only unable to do his previous work[,] but cannot,

3    considering his age, education, and work experience, engage in any other kind of

4    substantial gainful work which exists in the national economy." 42 U.S.C. §

5    1382c(a)(3)(B).

6        The Commissioner has established a five-step sequential analysis to

7    determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§

8    404.1520(a)(4)(i)-(v); 416.920(a)(4) (i)-(v). At step one, the Commissioner

9    considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i);

10   416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the

11   Commissioner must find that the claimant is not disabled. 20 C.F.R. § §

12   404.1520(b); 416.920(b).

13       If the claimant is not engaged in substantial gainful activities, the analysis

14   proceeds to step two. At this step, the Commissioner considers the severity of the

15   claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the

16   claimant suffers from "any impairment or combination of impairments which

17   significantly limits [his or her] physical or mental ability to do basic work

18   activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c);

19   416.920(c). If the claimant's impairment does not satisfy this severity threshold,

20   however, the Commissioner must find that the claimant is not disabled. *Id.*

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT ~ 5

At step three, the Commissioner compares the claimant's impairment to several impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a) (4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. §§ 404.1520(d); 416 .920(d).

If the severity of the claimant's impairment does meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity ("RFC"), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations (20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1)), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past ("past relevant work"). 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § § 404.1520(f); 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 6

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a) (4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and work experience. *Id.* If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § § 404.1520(g)(1); 416.920(g) (1). If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. *Id.*

The claimant bears the burden of proof at steps one through four above. *Lockwood v. Comm'r of Soc. Sec. Admin.,* 616 F.3d 1068, 1071 (9th Cir.2010). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § § 404.1560(c); 416.960(c)(2); *Beltran v. Astrue,* 700 F.3d 386, 389 (9th Cir.2012).

## ALJ'S FINDINGS

At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since December 12, 2011, the amended alleged onset date. Tr. 22. At step two, the ALJ found Plaintiff has the following severe impairments: obesity; hypothyroidism; gastroesophageal reflux disease ("GERD"); affective disorder;

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 7

anxiety disorder; borderline intellectual functioning; and methamphetamine dependence in full sustained remission. Tr. 23. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpt. P, App'x 1. Tr. 23. The ALJ then found that Plaintiff had the RFC

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). Specifically, the claimant can lift/carry twenty pounds occasionally and ten pounds frequently; stand/walk for six hours in an eight hour workday; sit for six hours in an eight hour workday; no climbing of ladders, ropes, or scaffolds, or exposure to unprotected heights; she is limited to performance of simple routine tasks, or lower semiskilled (SVP 3) tasks that she has already learned and demonstrated in past relevant work; and she is limited to no more than brief superficial contact with the general public.

Tr. 25. At step four, the ALJ found Plaintiff is capable of performing past relevant work as a sales attendant; ride attendant; and cleaner/housekeeper Tr. 34. In the alternative, at step five, the ALJ found that considering the Plaintiff's age, education, work experience, and RFC, there are other jobs that exist in significant numbers in the national economy that Plaintiff also can perform. Tr. 35. The ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, from December 12, 2011, through the date of this decision. Tr. 35.

## ISSUES

The question is whether the ALJ's decision is supported by substantial evidence and free of legal error. Specifically, Plaintiff asserts that the ALJ erred by improperly rejecting the opinions of Plaintiff's examining medical providers: Dr.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT ~ 8

William H. Jackline and Dr. Jeanette E. Higgins. ECF No. 12 at 7-13. Defendant argues that the ALJ reasonably evaluated the medical evidence. ECF No. 15 at 5-12.

## DISCUSSION

**Medical Opinions**

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari,* 246 F.3d 1195, 1201–02 (9th Cir.2001)(citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's. *Id.* If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir.2005). Conversely, "[i]f a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 9

1    evidence."[1] *Id.* (citing *Lester v. Chater,* 81 F.3d 821, 830–831 (9th Cir.1995)).

2    Plaintiff argues the ALJ improperly rejected the opinions of Plaintiff's examining

3    providers, Dr. William H. Jackline and Dr. Jeanette E. Higgins. ECF No. 12 at 8-

4    13.

5    **A. Dr. William Jackline**

6         In February 2012, Dr. Jackline completed a psychological evaluation of

7    Plaintiff. Tr. 316-323. Dr. Jackline diagnosed Plaintiff with major depressive

8    disorder, single episode, moderate; panic disorder, with agoraphobia, mild to

9    moderate; generalized anxiety disorder; posttraumatic stress disorder, mild to

10   moderate; cognitive disorder, NOS (provisional); and amphetamine dependence,

11   sustained full remission (by claimant's report). Tr. 322. Under the heading of

12   "medical source statement," Dr. Jackline opined that Plaintiff would be moderately

13   impaired in her ability to understand, remember and follow simple instructions;

14   _____

15   [1] Defendant argues the ALJ is not required to give "clear and convincing" reasons

16   to reject medical evidence, and instead urges the court to apply the extremely

17   deferential "substantial evidence" standard of review. ECF No. 15 at 5-6 n.1. The

18   court finds this argument is inapposite as the correct standard of review for these

19   medical opinions is whether the reasons given by the ALJ were specific and

20   legitimate, and supported by substantial evidence. *See Bayliss,* 427 F.3d at 1216.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT ~ 10

however, somewhat paradoxically, he found Plaintiff was only mildly, and "at times" moderately, impaired in her ability to understand, remember and follow "increasingly lengthy, fast-paced and complex verbal information and directions." Tr. 323. Dr. Jackline further opined that "at a work setting and, when required to work closely with others, [Plaintiff] would show a mildly impaired ability to sustain [h]er concentration and persist at a task;" and Plaintiff would "tend to show moderately impaired social interactive skills and [] a mildly to, at times, moderately impaired ability to quickly, independently and appropriately adapt to changes within her environment." Tr. 323.

The ALJ found that "[w]hile it is agreed the claimant has moderate limitations in social and cognitive functioning, they are not to a degree that would prevent simple routine tasks, the performance of past learned work, or to have brief superficial contact with the public." Tr. 30. Thus, the ALJ gave "little weight to the severity of" Dr. Jackline's findings for several reasons. Tr. 30. First, as noted by the Defendant, an ALJ may reject a physician's opinion if it is not supported by his or her own treatment notes. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Here, the ALJ noted that Plaintiff's "ability to perform simple tasks or those with an SVP 3 are shown by [Dr. Jackline's] exam wherein [Plaintiff] completed simple tasks, followed the conversation and tasks without difficulty, and performed serial threes." Tr. 30, 319-321. In further support of this reasoning, the

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 11

ALJ noted Plaintiff "has social skills with strangers as [Dr. Jackline] described her as pleasant, polite and cooperative." Tr. 30, 319. Moreover, the court's independent review of Dr. Jackline's mental status exam reveals that she presented with only a "mildly low energy level and with a mildly dysthymic mood;" and several times during the evaluation she "showed mild, mirthful responses in the form of brief smiles." Tr. 319. Plaintiff showed no irregularities of gait or posture; showed no psychomotor agitation; responded to all interview questions and attempted all tasks during the mental status examination; was not irritable or belligerent; spoke with normal volume and rate; had adequate remote memory; and was oriented to time, place, and person. Tr. 319-320. Thus, the ALJ"s reasoning that the results of Dr. Jackline's evaluation did not support the severity of his medical source statement was specific and legitimate, and supported by substantial evidence.

Second, the ALJ found that the severity of Dr. Jackline's findings "appeared largely based on the claimant's self-report while she is not entirely credible." Tr. 30. "An ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible." *Tommasetti*, 533 F.3d at 1041. As an initial matter, it is notable that Plaintiff fails to assign error to the ALJ's adverse credibility finding in this case. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 12

2008) (the court need not address issue not argued with specificity in Plaintiff's brief). While not challenged by Plaintiff, the court notes that the ALJ properly supported the adverse credibility finding with reasons supported by substantial evidence, including: the objective evidence does not support the degree of limitation alleged by Plaintiff; Plaintiff's medical records show a history of treatment and success managing her symptoms with medication; Plaintiff's daily activities were consistent with the ALJ's RFC finding; Plaintiff's testimony was inconsistent with other evidence of record; and the record contained evidence that Plaintiff was manipulating the system for the purposes of monetary gain. Tr. 26-29, 276. Instead of taking issue with the ALJ's credibility finding, the Plaintiff only argues that this was not a valid reason to reject Dr. Jackline's decision because the ALJ improperly noted that Dr. Jackline "did not have the benefit of reviewing the entire record of evidence, including the CDIU report." ECF No. 12 at 12 (citing Tr. 30). Plaintiff is correct that Dr. Jackline's report indicates that he was, in fact, able to review the limited records available at the time of his examination. Tr. 317. Moreover, it was improper for the ALJ to rely on Dr. Jackline's failure to review the CDIU report, which was not transmitted until May 31, 2012, several months after Plaintiff was evaluated by Dr. Jackline in February 2012. *See* Tr. 273, 316. However, the court finds these errors are harmless because the ALJ articulated

1    additional specific and legitimate reasons for rejecting Dr. Jackline's opinion. *See*

2    *Carmickle*, 533 F.3d at 1162-63.

3        First, the only evidence from the adjudicatory evidence that was available

4    for Dr. Jackline's review was a single doctor visit for "medication management"

5    on December 16, 2011. Tr. 290-296, 317. Moreover, as noted in the previous

6    section, the results of Dr. Jackline's mental status examination were almost entirely

7    within normal limits, including: descriptions of Plaintiff as mirthful, friendly,

8    pleasant, polite, cooperative, and compliant; 100% intelligible verbalizations;

9    oriented as to time, place and person; adequate remote memory; correctly spelling

10   WORLD forward and backward; and following a simple three step command. Tr.

11   319-321. Only one portion of the mental status exam referred to Plaintiff as

12   presenting with "mildly low energy" and a "mildly dysthymic mood." Tr. 319.

13   This objective evidence was in stark contrast to Plaintiff's self-report during the

14   evaluation that she rated herself at an 8 out of 10 on a depression scale, saw

15   shadows out of the corners of her eyes, had anxiety, endorsed having posttraumatic

16   stress disorder, had only one friend, and was not even able to look for work due to

17   being nervous and upset. Tr. 316-322. Thus, it was reasonable for the ALJ to infer

18   that Dr. Jackline's findings were largely based on Plaintiff's non-credible self-

19   report, which accounted for a majority of the information recounted in Dr.

20   Jackline's evaluation. *See Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT ~ 14

1190, 1193 ("the Commissioner's findings are upheld if supported by inferences reasonably drawn from the record."). This was a specific and legitimate reason for the ALJ to reject Dr. Jackline's opinion.

Third, and finally,[2] the ALJ found that Dr. Jackline's opinion "was not supported by longitudinal clinical findings of mental abnormality" and "inconsistent with the overall evidence that shows [Plaintiff's] symptoms are medically manageable." Tr. 30. The consistency of a medical opinion with the record as a whole is a relevant factor in evaluating that medical opinion. *See Orn v. Astrue*, 495 F.3d 625, 631(9th Cir. 2007). Plaintiff argues that Dr. Jackline's findings are consistent with the findings of examining physician Dr. Jeannette Higgins, and records from Frontier Behavioral Health from April 2013 to July 2013. ECF No. 12 at 12. However, as noted by the Defendant, Drs. Jackline and Higgins reached opposite conclusions as to whether Plaintiff could follow simple directions. ECF No. 15 at 8-9 (citing Tr. 323, 371). Moreover, as noted by the ALJ, Plaintiff's records during the adjudicatory period indicate that she did not seek

---

[2] The ALJ also notes that "the evidence shows the claimant was motivated to try and establish entitlement to disability benefits." Tr. 30. However, the court declines to address this issue as it was not raised with specificity in Plaintiff's briefing. *See Carmickle*, 533 F.3d at 1161 n.2.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 15

mental health counseling until April 2013; and after not showing up for multiple

appointments she was discharged from care in July 2013. Tr. 30 (citing Tr. 365).

During this care at Frontier Behavioral Health, she was able to attend group

therapy classes, which the ALJ noted "suggest[s] a greater ability to be around

others than alleged" (Tr. 30); and Plaintiff  reported that her depression and sleep

was better with medication. Tr. 341, 348, 352. The ALJ also noted that Plaintiff

sought mental health medication from her primary provider, "without reporting any

significant mental health difficulties." Tr. 30, 377, 398, 402, 432. Finally, the ALJ

relied on several of Plaintiff's statements to Dr. Jackline that appear inconsistent

with the overall record at that time, including: (1) Plaintiff's report to Dr. Jackline

that she had no close relationships and only one friend, which conflicts with

evidence that Plaintiff reported having a fiancé during this same time period (Tr.

279, 321); and (2) Plaintiff's reports of both auditory and visual hallucinations to

Frontier Behavioral Health (Tr. 343); while denying auditory hallucinations, and

describing a different type of hallucination, to Dr. Jackline (Tr. 320). Tr. 30. These

inconsistencies between the overall record, and the more severe limitations

assessed by Dr. Jackline, was a specific and legitimate reason to reject his opinion.

**B. Dr. Jeanette Higgins**

In December 2013, Plaintiff was referred by the Division of Disability

Services for a complex psychological assessment. Tr. 367-376. Dr. Higgins

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT ~ 16

diagnosed Plaintiff with major depressive disorder, recurrent, moderate; anxiety disorder NOS; amphetamine dependence, sustained full remission (by claimant's report); alcohol dependence, sustained full remission (by history); and borderline intellectual functioning. Tr. 371. Dr. Higgins opined that Plaintiff would be able to understand, remember, and carry out simple instructions and to make judgments on simple work related decisions; but would not have the ability to understand, remember and carry out complex instructions or to make judgments on complex work-related decisions based on memory and cognitive impairment. Tr. 371. She further opined that Plaintiff would be able to

> interact appropriately with the public in low-pressure conditions with immediate access to support given her presentation and employment history. She would do best in interactions with the public that are rather limited in scope and structured or scripted. She likely has the ability to appropriately interact with a supervisor and coworkers who are patient, tolerant, and supportive. She does not have the ability to respond appropriately to typical work situations or to changes in a routine work setting given memory and cognitive impairments, decompensation under perceived pressure, and lack of self-confidence in her abilities.

Tr. 371. As noted by the ALJ, Dr. Higgins also completed a medical source statement reflecting the above statements in the form of mild to marked limitations in a variety of cognitive and social functioning. Tr. 31, 373-74. In particular, Dr. Higgins opined marked limitations in Plaintiff's ability to understand, remember, and carry out simple instructions and make judgments on complex work-related

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 17

1  decisions; and her ability to respond appropriately to usual work situations and to

2  changes in a routine work setting. Tr. 373-74.

3        The ALJ gave partial weight to Dr. Higgins' opinion. Tr. 31. He gave "great

4  weight" to the portion of her opinion that Plaintiff is able to perform simple tasks

5  and interact with the public on a restricted basis; because it was consistent with her

6  performance and ability to persist through the examination, as well as her daily

7  activities of reading, using the computer, and attending church. Tr. 31. The ALJ

8  also found this portion of the opinion was consistent with Plaintiff's report to Dr.

9  Higgins that she had a "history of satisfactory relationships with coworkers and

10  supervisors." Tr. 31, 369. However, the ALJ gave "no weight" to the portion of Dr.

11  Higgins' opinion that Plaintiff does not have the ability to respond appropriately to

12  typical work situations or to changes in a routine work setting given memory and

13  cognitive impairments, decompensation under perceived pressure, and lack of self-

14  confidence in her abilities. Tr. 32, 371. Plaintiff argues that the ALJ failed to

15  properly consider Dr. Higgins' opinion. ECF No. 12 at 12-13.  The court disagrees.

16  As noted by Defendant, the ALJ provided multiple valid reasons for rejecting Dr.

17  Higgins' opinion.

18        As in the previous section, Plaintiff's only specific challenge to the ALJ's

19  findings regarding this portion of Dr. Higgins' opinion is to briefly contend that the

20  ALJ improperly found that Dr. Higgins "did not have the opportunity to review all

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT ~ 18

of the evidence of record, including the CDIU report that shows the claimant was

likely motivated by secondary gain." ECF No. 12 at 12-13 (citing Tr. 32). Again,

Plaintiff is correct that Dr. Higgins' report indicates that she did, in fact, review all

of Plaintiff's records; including: the CDIU report,[3] medical records, SSA reports,

and the results of her own independent testing. *Id*. (citing Tr. 367-370). Thus, it

was error for the ALJ to misstate that Dr. Higgins was unable to review "all of the

evidence of record." Tr. 32. Further, the court finds the ALJ erred by relying on

reasoning that "[s]ome of [Dr. Higgins' opinion] was based on the claimant's self-

report, while the claimant is not entirely credible." Tr. 32. It is widely accepted that

an ALJ may reject a physician's opinion if it is based "to a large extent" on

claimant's self-reports that have been properly found not credibly." *Tommasetti*,

533 F.3d at 1041. However, when explaining a reason for rejecting medical

opinion evidence, the ALJ must do more than state a conclusion, rather, the ALJ

"must set forth his [or her] own interpretations and explain why they, rather than

the doctors', are correct." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998).

---

[3] Plaintiff refers, without making any specific argument, to the ALJ's assignment

of "little weight" to the CDIU report. ECF No. 12 at 12. The court declines to

address this issue as it was not raised with specificity in Plaintiff's briefing. *See*

*Carmickle*, 533 F.3d at 1161 n.2.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT ~ 19

1   Here, despite Plaintiff's failure to challenge the ALJ's adverse credibility finding,

2   the court finds that the ALJ does not articulate sufficient reasoning as to how this

3   particular portion of Dr. Higgins' opinion regarding Plaintiff's ability to respond to

4   typical work situations and changes in a routine work setting was based "to a large

5   extent" on claimant's self-reports, particularly in light of the record review and

6   objective testing performed by Dr. Higgins. ECF No. 12 at 12-13. This was error.

7       However, the court finds these errors are harmless because the ALJ

8   articulated additional specific and legitimate reasons for rejecting Dr. Higgins'

9   opinion. *See Carmickle*, 533 F.3d at 1162-63. First, an ALJ may discount a

10  medical source opinion to the extent it conflicts with the claimant's daily activities.

11  *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 601-602 (9th Cir. 1999).

12  Plaintiff does not address the ALJ's characterization of Plaintiff's daily activities

13  as inconsistent Dr. Higgins' findings. *See Carmickle*, 533 F.3d at 1161 n.2 (court

14  need not address issue not argued with specificity in Plaintiff's brief). As noted by

15  the ALJ, Plaintiff reports caring for her three children, including a young child

16  with autism. Tr. 32, 368. In addition, as noted by Dr. Higgins, Plaintiff denied any

17  difficulty with activities of daily living including cooking, cleaning, laundry, and

18  grocery shopping. Tr. 368.  The ALJ further notes that Plaintiff failed to disclose to

19  Dr. Higgins that earlier that same year she reported being "excited" to start school

20  with the goal of starting a catering business. Tr. 32, 333, 337, 345, 352. Similarly,

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT ~ 20

Plaintiff also failed to report to Dr. Higgins that she had been looking for work earlier in the year, and had a boyfriend who she was planning to marry after finishing school. Tr. 327, 337, 358. These conflicts between Plaintiff's reported activities and this portion of Dr. Higgins' opinion was a legitimate and specific reason, unchallenged by Plaintiff, to reject this portion of Dr. Higgins' opinion.

Second,[4] and most significantly, the ALJ noted inconsistencies between Dr. Higgins' opinion and the record evidence as a whole; as well as finding that the objective medical evidence is consistent with the assessed RFC. Tr. 32. An ALJ may discredit medical source opinions that are unsupported by the record as a whole or by objective medical findings. *Batson*, 359 F.3d at 1195. As noted by the ALJ, Dr. Higgins found that "while Plaintiff's scores were low on cognitive testing, the claimant's adaptive functioning since her developmental period has not been consistent with intellectual disability (formerly referred to as mild mental retardation)." Tr. 31-32 (also noting that Plaintiff has a history of working at

---

[4] The ALJ also notes that Dr. Higgins "did not consider that he claimant may have intentionally performed worse on this exam with her, than with Dr. Jackline, given her inability to spell a word backwards and decreased memory ability." 32. Tr. However, the court declines to address this issue as it was not raised with specificity in Plaintiff's briefing. *See Carmickle*, 533 F.3d at 1161 n.2.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 21

1    substantial gainful activity levels), Tr. 371. Thus, Dr. Higgins' interpretation of her

2    own objective testing appears to be inconsistent with her opinion that Plaintiff

3    would be unable to adapt to changes in a routine work setting. Tr. 371. Further, as

4    noted by the ALJ, Plaintiff is consistently described, throughout the record, as

5    cooperative and her thought processes are intact. Tr. 32, 319-321, 346-347, 369.

6    Dr. Higgins' own mental status exam revealed that Plaintiff followed the

7    conversation without difficulty, her thought process was "coherent and goal

8    directed," and she sat through the three and half hour examination with "effortful"

9    concentration and persistence. Tr. 369. In addition, as noted by the ALJ, the

10   medical records "do not support the degree of panic and anxiety attacks alleged by

11   the Plaintiff." Tr. 32. As discussed in the previous section, Plaintiff's records show

12   that she only sought mental health counseling in April 2013 and was discharged for

13   not showing up to appointments several months later, in July 2013. Tr. 365.

14   Moreover, throughout the adjudicatory period, Plaintiff sought mental health

15   medication from her primary provider, "without reporting any significant mental

16   health difficulties." Tr. 30, 377, 398, 402, 432. Finally, as noted by the ALJ, "by

17   the claimant's own self-reports, her medication helps to manage and alleviate her

18   mental health symptoms." Tr. 32, 61-63, 341, 348, 352.

19        While not argued with specificity in Plaintiff's briefing, the court

20   acknowledges that the record includes objective evidence that could be interpreted

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT ~ 22

more favorably to Plaintiff; including Dr. Higgins' findings that Plaintiff had low-to-borderline range memory abilities and extremely low-to-borderline cognitive abilities, borderline intellectual functioning, sporadic eye contact, and constricted affect. Tr. 369-371. However, "where evidence is susceptible to more than one rational interpretation, it is the [Commissioner's] conclusion that must be upheld." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Thus, the inconsistencies between the overall record and the portion of Dr. Higgins' opinion assessing more severe limitations, was a specific and legitimate reason to reject her medical opinion. Finally, even assuming, *arguendo*, that the ALJ did err in rejecting this portion of Dr. Higgins' opinion, any error is harmless because the ALJ's assessed RFC arguably captured this portion of the limitations opined by Dr. Higgins by limiting Plaintiff to "tasks that she has already learned and demonstrated in past relevant work." Tr. 25; *See Molina*, 674 F.3d at 1115 (an error is harmless if it is does not impact the ALJ's ultimate non-disability findings).

## CONCLUSION

After review the court finds the ALJ's decision is supported by substantial evidence and free of harmful legal error.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1.  Plaintiff's Motion for Summary Judgment, ECF No. 12, is **DENIED**.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 23

2. Defendant's Motion for Summary Judgment, ECF No. 15, is

**GRANTED**.

The District Court Executive is hereby directed to enter this Order and provide copies to counsel, enter judgment in favor of the Defendant, and **CLOSE** the file.

**DATED** this 2nd day of December, 2015.

_____s/Fred Van Sickle_____
Fred Van Sickle
Senior United States District Judge

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT ~ 24